NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.S. & J.S. <u>on behalf of</u> R.S., | : |
| | : |
| Plaintiffs, | : Civil Case No. 06-3494 (FSH) |
| | : |
| v. | : **OPINION** |
| | : |
| SOUTH ORANGE/MAPLEWOOD BOARD OF EDUCATION | : Date: March 25, 2008 |
| | : |
| | : |
| Defendant. | : |
| | : |

**HOCHBERG, District Judge**

     The matter comes before the Court upon the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs seek review of an ALJ decision on claims brought pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400, <u>et. seq.</u>[1] Plaintiffs also bring claims under Section 504 of the Rehabilitation Act ("§ 504"), 29 U.S.C. §§ 794(a), and 42 U.S.C. § 1983. Plaintiffs' motion for summary judgment (DKT#11) and Defendant's motion for summary judgment (DKT#10) were filed on August 16, 2007. The Court has considered the arguments of the parties on the papers pursuant to Federal Rule of Civil Procedure 78.

---

[1]    "New Jersey has adopted a thorough statutory and administrative regime pursuant to the IDEA" at N.J. Stat. Ann. § 18A:46-1, <u>et seq</u>. <u>A.W. v. Jersey City Public Schs.</u>, 341 F.3d 234, 244 (3d Cir. 2003).

## I. FACTS

Petitioner R.S. and her parents, J.S. and J.S., are residents of Maplewood, which is within the South Orange/Maplewood School District ("the District"). R.S. began attending District schools in 1993. See Final Decision of ALJ Daniel McKeown ("ALJ Op.") ¶ 2.[2] The salient period for this case begins in September 2003, at the beginning of R.S.'s 10th grade year.[3] Shortly after the school year began, R.S.'s parents were called to R.S.'s school by the vice-principal after R.S. was discovered cutting herself and in a state of "acute emotional crisis." See ALJ Op. ¶ 10A. R.S. was hospitalized and diagnosed with depressive disorder, among other maladies. See id. ¶ 10B. R.S. was using drugs and alcohol in the period leading up to the September 2003 cutting incident. See id. ¶¶ 9, 14A. Following R.S.'s cutting incident, the Maplewood/South Orange Board of Education's ("the Board") Department of Special Services began "interventions" on October 1, 2003. See id. at 23. The interventions proved unsuccessful and on December 12, 2003 the Board called an evaluation conference which recommended a child study evaluation of R.S. See id. ¶ 11.

The Board received Plaintiffs' consent to the child study evaluation on January 5, 2004. See id. ¶12. ALJ McKeown found that the Board made several calls to Plaintiffs to begin the

---

[2]      Citations to specific paragraphs in ALJ McKeown's opinion refer to the numbered paragraphs in the opinion's "Facts" section, found on pages 7-20. Other citations refer to page numbers 1-7 and 20-27, which are not divided by paragraph.

[3]      Plaintiffs' brief includes a recitation of R.S.'s pre-10th-grade difficulties. Nevertheless, Plaintiffs' legal and factual arguments in support of their request for tuition reimbursement begin with the period following R.S.'s "acute emotional crisis" in September 2003. See Pl. Mot. at 37. Plaintiffs do not challenge ALJ McKeown's finding that "the Board had no reason at any time prior to September 2003 . . . to suspect [R.S.] had a learning disability that would have signaled the need for a child study team evaluation." See ALJ Op. at 22.

evaluation process, but that Plaintiffs "declined further communication with the [evaluation] team." Id. ¶ 13A.  The evaluation could not begin because, on or around January 21, 2004, Plaintiffs withdrew R.S. from school and unilaterally enrolled her in an out-of-district therapeutic residential facility in Georgia for treatment.  See id. ¶ 13B.  Following treatment in Georgia, R.S. was unilaterally enrolled in the Monarch School in Montana in February 2004.  See id.  The Board asserts that it learned of R.S.'s withdrawal from her District school on January 27, 2004. See id. ¶ 16.

In the period that followed R.S.'s unilateral placement at private facilities in Georgia and then Montana, Plaintiffs and Defendant exchanged correspondence, but at no time was R.S. made available to the Board for evaluations.  See id. ¶¶ 18, 19.  ALJ McKeown found that during this period "the Board's child study team had been precluded from evaluating R.S. through the conduct of petitioners."  See id. at ¶ 19.  Although the Board was not able to evaluate R.S. during this period because she was first in Georgia, then Montana, sometime between February 2004 and March 16, 2004 Plaintiffs submitted psychological and educational evaluations of R.S. to the Board.  See id. ¶ 20.  The Board received these evaluations, but did not accept the evaluators' conclusion that R.S.'s mental health issues required residential treatment.  See id.  On April 6, 2004 the Board notified petitioners that the results of the Woodcock-Johnson III Test of Achievement demonstrated that R.S. did not have a learning disability.  See id. ¶ 23B.  On May 5, 2004 the Board's case manager and Plaintiffs conducted a meeting to evaluate R.S.'s testing and evaluations to date.  See id. ¶ 22.  The Board concluded that R.S. did not require residential treatment and that she was ineligible for special education.  See id. ¶¶ 23A, 23B

On June 23, 2004 Plaintiffs submitted an additional psychological evaluation from Dr. Robert Burr.  See id. ¶ 24.  Dr. Burr concluded that R.S. did not have a learning disability, that her drug and alcohol abuse had exacerbated her attention and memory difficulties, and also that R.S. had "Major Depressive Disorder, Anxiety Disorder, and history of substance abuse."  See id. ¶ 24.  The Board did not hold another eligibility meeting based on Plaintiffs' submission of Dr. Burr's report.  In January 2005 Plaintiffs filed a Due Process request seeking tuition reimbursement.  See id. ¶ 27.  Plaintiffs withdrew their petition in March 2005 during an attempt to mediate the dispute, and reinstated it in June 2005.  See id. ¶ 29.

On June 24, 2005, Plaintiffs submitted to the Board a new psychiatric evaluation completed by Dr. Howard Schwartz.  See id. ¶ 30.  Dr. Schwartz concluded that R.S. continued to suffer from a "chronic although improved depressive reaction . . . ."  The Board did not hold an eligibility meeting upon its receipt of Dr. Schwartz's report.  A year later, in June 2006, Plaintiffs contacted the Board to inquire whether R.S.'s eligibility status had changed since the parties last met for an eligibility meeting on May 5, 2004.  Plaintiffs were given a summary of an eligibility meeting held by the Board on May 11, 2006, at which the Board determined that R.S. was eligible for special education and related services.  See id. ¶ 33.  The Board based its May 11, 2006 assessment on Dr. Schwartz's report.  See id. ¶ 33 (noting that the "basis for [the Board's] determination is in Dr. Schwartz's evaluation . . . .").  Because of the Board's year-long delay from June 2005 to May 2006, ALJ McKeown concluded that the Board had failed to provide R.S. with a "free appropriate public education" (FAPE) during this period as required by IDEA.  See id. at 26.  ALJ McKeown awarded R.S. tuition reimbursement and related costs for the 2005-06 school year.  Id.

4

Both parties seek review of ALJ McKeown's decision.  Plaintiffs seek reimbursement of tuition and related costs for the academic years 2003-04, 2004-05 and affirmation of the ALJ's grant of tuition reimbursement for 2005-06.  Defendant seeks a determination that the Board is not liable for tuition for the 2003-04, 2004-05, or 2005-06 school years.

## II. STANDARD

In IDEA cases, motions for summary judgment are the method by which the Court is asked to decide the case based on the administrative record.  Fisher v. Stafford Twp. Bd. of Educ., No. 05-2020, 2007 WL 674304, *9 (D.N.J. 2007) (citing K.H. v. North Hunterdon-Vorhees Regional, No. 05-4925, 2006 WL 2331106, *4 (D.N.J. Aug. 10, 2006)).  The standard of review in an IDEA case differs from that used in a typical summary judgment motion, however, and a "District Court applies a modified version of de novo review and is required to give due weight to the factual findings of the ALJ."  L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006); see also Board of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 206 (1982)[4] ("The fact that § 1415(e) [of predecessor Education for All Handicapped Children's Act] requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings.").  "The purpose of the 'due weight' standard is to prevent the courts from imposing their own 'view of preferable educational methods on the

---

[4]        In Rowley, the Supreme Court interpreted a predecessor to the IDEA, the Education for all Handicapped Children's Act.  See Gagliardo v. Arlington Central Sch. Dist., 489 F.3d 105, 107 n.1 (2d Cir. 2007).  Courts have continued to apply Supreme Court's "due weight" holding to the IDEA.  See, e.g., L.E., 435 F.3d at 389.

states.'" <u>Fisher v. Stafford Twp. Bd. of Educ.</u>, No. 05-2020, 2007 WL 674304, *9 (D.N.J. 2007)

(quoting <u>Rowley</u>, 458 U.S. at 206).

Under the "due weight" standard, however, the Court is not required to accept the

findings of the administrative law judge. <u>Carlisle Area Sch. v. Scott P.</u>, 62 F.3d 520, 529 (3d

Cir. 1995) ("We have interpreted <u>Rowley</u>'s mandate to accord 'due weight' to the administrative

proceedings as a requirement to consider – although not necessarily to accept – the administrative

fact findings."). If the Court declines to accept the ALJ's findings, the Court must find factual

support in the record for any conclusions contrary to the ALJ's and "fully explain[] its reasons

for departing from the state decision." <u>S.H. v. State-Operated Sch. Dist. of City of Newark</u>, 336

F.3d 260, 270-71 (3d Cir. 2003). The court "must explain why it does not accept the ALJ's

findings of fact to avoid the impression that it is substituting its own notions of sound

educational policy for those of the agency it reviews." <u>Id.</u> at 270; <u>see also</u> <u>Carlisle Area Sch. v.</u>

<u>Scott P.</u>, 62 F.3d 520, 529 (3d Cir. 1995).


III. DISCUSSION

*A. The Parties' Tentative Settlement Agreement*

As a threshold matter, Plaintiffs argue that this Court should enforce the parties' tentative

settlement agreement, which was read into the record on August 30, 2005 before ALJ McKeown.

ALJ McKeown considered and rejected Plaintiffs' request to enforce the parties' tentative

agreement in his June 15, 2006 opinion because one or more preconditions to the settlement were

not met. The tentative settlement was conditioned upon Board approval, which was never

obtained. <u>See</u> ALJ Op. at 5; Eppolite Decl. ¶¶ 6-13. Plaintiffs do not cite any case law

suggesting that this Court has the authority to enforce a tentative settlement agreement in an IDEA case when the settlement was not approved by the relevant Board of Education. The Court declines to enforce the tentative settlement agreement between the parties.

### B. Plaintiffs' § 1983 Claims

In Counts IV and V of their Complaint Plaintiffs seek to enforce § 504 of the Rehabilitation Act and the IDEA, respectively, through 42 U.S.C. § 1983. Defendant moves for dismissal of these claims as barred by the Third Circuit's recent decision in A.W. v. Jersey City Public Schs., 486 F.3d 791, 803, 805 (3d Cir. 2007). In A.W. the Third Circuit reversed W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995), and held that, because § 504 and the IDEA have comprehensive remedial schemes, § 1983 is not available to enforce those statutes. 486 F.3d at 803 ("Congress did not intend § 1983 to be available to remedy violations of the IDEA . . . ."), 805 ("we conclude that § 1983 is not available to provide a remedy for defendants' alleged violations of [defendant's] rights under Section 504"). The Court will grant Defendant's motion to dismiss Plaintiffs' Counts IV and V as precluded by A.W. v. The Jersey City Public Schs.

### C. Tuition Reimbursement for the 2003-04 and 2004-05 School Years

Plaintiffs seek reimbursement for tuition paid for R.S.'s out-of-District placement during the 2003-04 and 2004-05 school years. Both parties seek summary judgment on this claim. Plaintiffs seek tuition for both years pursuant to the Child Find provision of IDEA, 20 U.S.C. § 1412(a)(3)(A).[5] As one court has explained:

---

[5]      20 U.S.C. § 1412(a) of IDEA provides that a state is eligible for federal assistance if the state creates a plan to ensure that the state meets the conditions established by that subsection. The Child Find provision contained in 20 U.S.C. § 1412(a)(3)(A) is one such condition. It requires that

> The "child-find" provisions of the IDEA require school districts to identify, locate and evaluate disabled children.  These provisions require that children be identified and evaluated within a reasonable time after school officials notice behavior likely to indicate a disability. . . . Thus, the "duty 'is triggered when the [state . . . ] has reason to suspect a disability, and reason to suspect that special education services may be needed to address that disability.'"

New Paltz Cent. Sch. Dist. v. St. Pierre ex rel. M.S., 307 F. Supp. 2d 394, 400 n.13 (N.D.N.Y. 2004) (internal citations omitted) (alterations in original).  Plaintiffs assert that the District was put on notice of R.S.'s disability in September 2003 when R.S. was discovered cutting herself on school property, the vice-principal called her parents, and she was hospitalized.  Alternatively, Plaintiffs suggest that the District was on notice when it received Dr. Burr's report in June 2004.

In his thorough and well-reasoned opinion ALJ McKeown considered and rejected Plaintiffs' Child Find argument.  With regard to R.S.'s pre-September 2003 difficulties, ALJ McKeown found that "the Board had no reason at any time prior to September 2003 . . . to suspect [R.S.] had a learning disability that would have signaled the need to for a child study team evaluation."  See ALJ Op. at 22.  With regard to R.S.'s crisis in September 2003, ALJ McKeown found that when R.S. "Came to the attention of the Board's Department of Special Services," see id. ¶ 10C, following R.S.'s "acute emotional crisis" in September 2003, see id. ¶ 10A, "interventions were adopted before a full child study team evaluation was considered," id. ¶

---

> [a]ll children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

20 U.S.C. § 1412 (a)(3)(A).

10C.  ALJ McKeown also found that, after "[t]he interventions were not successful," see id. ¶ 10C, "[a]n evaluation conference was held on December 12, 2003 . . .[at which] it was determined . . . that an evaluation of R.S. was warranted . . . ."  Id. ¶ 11.

Importantly, Plaintiffs did not immediately consent to the child find evaluation proposed by the Board on December 12, 2003.  Id. ¶ 12.  ALJ McKeown found that the Board did not receive Plaintiffs' signed consent to the child study evaluation until January 5, 2004.  Id. ¶ 12.  After Plaintiffs submitted the signed consent form, Plaintiffs "declined further communication with the team."  Id. ¶ 13A.  On January 21, 2004, without notice to the Board, and before the Board could conduct its evaluation of R.S., Plaintiffs unilaterally removed R.S. from the District school and placed her at the Ridge Creek Wilderness Program in Georgia.  Id. ¶ 13B.  Plaintiffs' conduct during this period led ALJ McKeown to conclude that "the Board's child study team had been precluded from evaluating R.S. through the conduct of petitioners."  Id. ¶ 19.

Plaintiffs do not dispute ALJ's McKeown's factual findings concerning the District's actions between September and December 2003 in response to R.S.'s acute emotional crisis.  Nor do Plaintiffs direct the Court to any legal authority that suggests that interventions of the sort that the District began immediately following R.S.'s acute episode in September 2003 are insufficient under the Child Find provision of IDEA.  Further, there is ample evidence in the record to support ALJ McKeown's finding that Plaintiffs failed to cooperate with the Board during this period and nothing in the record to support or suggest a contrary conclusion.  The Court affirms ALJ's McKeown's finding that the Board's actions following R.S.'s acute emotional crisis in September 2003 were reasonable and did not violate IDEA's Child Find provision.  See W.B. v. Matula, 67 F.3d 484, 501 (3d Cir.1995) abrogated in part by A.W., 486 F.3d at 799 (abrogating

9

W.B.'s holding that 42 U.S.C. § 1983 was available to enforce the IDEA); New Paltz Cent. Sch. Dist., 307 F. Supp. 2d at 400 n.13.

Plaintiffs also argue that Dr. Burr's report, created in May 2004 but not submitted by Plaintiffs to the Board until June 23, 2004, see ALJ Op. ¶ 24, demonstrates that the District failed to meet its Child Find obligations. Plaintiffs argue that Dr. Burr's report should have led the Board to classify R.S. as eligible for special education services because Dr. Burr's report contained conclusions similar to those provided a year later by Dr. Schwartz, which, in turn, formed the basis for the Board's conclusion that R.S. was entitled to special education services. Plaintiffs argue that this alleged violation of the Child Find provision of IDEA entitles them to tuition for the 2004-05 school year.

Dr. Burr's report states that R.S.'s "cognitive profile does not reflect learning disability, or marked attention deficit or memory difficulties." ALJ McKeown properly characterized Dr. Burr's opinion, noting that R.S. "did not have a learning disability and that in academic respects she was well within the average range of achievement . . . ." ALJ Op. at 25. It is equally important to note that ALJ McKeown also found that "cooperation by petitioners with the child study team did not reach a meaningful level until in or about June 2005," a full year after Plaintiffs submitted Dr. Burr's report. ALJ McKeown concluded that Dr. Burr's report "provide[d] no basis for the team [to] conduct[] another eligibility meeting . . . or for the team to have changed earlier determination that R.S. was not eligible for special education." Id. After reviewing Dr. Burr's report and giving due weight to ALJ McKeown's factual findings – particularly ALJ McKeown's finding that R.S.'s parents did not cooperate meaningfully with the

Board prior to June 2005 – the Court finds that Dr. Burr's report does not provide grounds for a conclusion contrary to that reached by ALJ McKeown.

For the above-stated reasons, the Court will deny Plaintiffs' motion for summary judgment for tuition reimbursement for 2003-04; will grant Defendant's motion for summary judgment for tuition reimbursement for 2003-04; and will affirm ALJ McKeown's denial of tuition for 2003-04.  The Court will also deny Plaintiffs' motion for summary judgment for tuition for the 2004-05 school year; will grant Defendant's motion for summary judgment for the 2004-05 school year; and will affirm ALJ McKeown's opinion regarding tuition reimbursement for the 2004-05 school year.

### D. ALJ's McKeown's Award of Tuition for the 2005-06 School Year

ALJ McKeown granted Plaintiffs' request for tuition for the 2005-06 school year after finding that the Board had denied R.S. a FAPE in violation of IDEA.  Defendant argues that Plaintiffs may not be reimbursed for tuition for the 2005-06 school year because R.S. had not previously received special education in the District.[6]  Defendant relies on the language of  20 U.S.C. § 1412(a)(10)(C)(ii), which reads:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency

---

[6]     Defendant also argues that Plaintiffs are not entitled to tuition reimbursement for the 2005-06 school year because Plaintiffs' initial request for a Due Process hearing did not include a claim for that school year.  This argument is without merit.  Plaintiffs' initial request for a Due Process hearing included a request for "[a] monetary award equal to the cost of the Monarch School from February 17, 2004 to the date of judgment . . . ."  ALJ McKeown's opinion was issued on June 15, 2006.  The issue was therefore properly before ALJ McKeown and is now properly before this Court.

to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added).  Defendant suggests that the emphasized clause in the excerpt above should be interpreted to mean that parents may be reimbursed for private tuition <u>only if</u> a child has first received special education in the District.

The Court declines to adopt Defendant's interpretation of 20 U.S.C. § 1412(a)(10)(C)(ii). This statutory provision provides tuition reimbursement <u>if</u> a child has previously received special education, but the provision does not preclude tuition reimbursement in cases where the child is unilaterally placed in a private institution before the child receives special education from the defendant Board of Education.  Defendant would have the court read an "only if" into a statute that says "if."  In <u>Frank G. v. Board of Educ. of Hyde Park</u>, the Second Circuit addressed this argument in the context of a child's parents' unilateral decision to remove the child from public school after the board proffered an inappropriate IEP.  The Second Circuit noted that

> [t]he plain language of 20 U.S.C. § 1412(a)(10)(C)(ii) does not say that tuition reimbursement is <u>only</u> available to parents whose child had previously received special education and related services from a public agency, nor does it say that tuition reimbursement is not available to parents whose child had not previously received special education and related services. . . . [Moreover, t]his section . . . is not the only section or even the principal section of the IDEA that speaks to this issue.

> Another section of the IDEA, 20 U.S.C. § 1415(i)(2)(C), authorizes a district court hearing a challenge to the failure of a local education agency to provide a free appropriate public education to "grant such relief as [it] determines is appropriate." In [<u>Sch. Comm. of Burlington v. Dep't of Educ.</u>, 471 U.S. 359 (1985)] . . . , the Supreme Court held that the identically worded predecessor of this section, 20 U.S.C. § 1415(e)(2) (1984), authorized the equitable remedy of tuition reimbursement to parents who had enrolled their disabled child in a private school while they successfully litigated the issue of the inappropriateness of his public placement.

12

459 F.3d 356, 368-69 (2d Cir. 2006), cert. denied, 128 S. Ct. 436 (2007).  The Second Circuit reasoned that forcing a child to first receive special education in the school district would "place the parents of children with disabilities in the untenable position of acquiescing to an inappropriate placement in order to preserve their right to seek reimbursement from the public agency that devised the inappropriate placement."  Frank G., 459 F.3d at 372.

The reasoning of Frank G. applies to the case at bar.  ALJ McKeown found that Defendant was in possession of Dr. Schwartz's report as of June 24, 2005.  At that time Defendant had not convened an eligibility meeting since May 5, 2004, see ALJ Op. at 25, and none was held in response to Dr. Schwartz's report.  Nevertheless, after nearly a full year of inaction, Defendant determined that Dr. Schwartz's finding that R.S. has a "chronic although improved depressive reaction" qualified R.S. for special education and related services.  See ALJ Op. ¶ 33.  Defendant's argument that R.S. is not entitled to tuition reimbursement under these circumstances would have the perverse effect of rewarding the School Board for their year-long delay in addressing Dr. Schwartz's report.  The Board possessed all the information it needed to determine that R.S. was eligible for special education and, as ALJ McKeown found, Plaintiffs were fully cooperating with the Board from the time they submitted Dr. Schwartz's report in June 2005.  See ALJ Op. at 25.  Once the Board had Plaintiffs' full cooperation and the necessary information to find R.S. eligible for special education, the Board's failure to reach a conclusion on R.S.'s status for over a year denied R.S. a FAPE, as guaranteed by IDEA.[7]  The Court will

---

[7]        In Frank G. the Board had already prepared an IEP for the child before the child was unilaterally removed from the district.  In the case at bar, the Board had not yet prepared an IEP for R.S.  This is a distinction without a difference.  If the law were as Defendant suggests, parents would be required to wait endlessly while the Board decided whether and when to

affirm ALJ McKeown's grant of tuition to Plaintiffs for the 2005-06 school year; will grant

summary judgment to Plaintiffs on this issue; and will deny summary judgment to Defendant on

this issue.

### C. Plaintiffs' Claim Pursuant to § 504 of the Rehabilitation Act

Defendant moves to dismiss Plaintiffs' claim under § 504 of the Rehabilitation Act.

Section 504 provides in relevant part that

> [n]o otherwise qualified individual with a disability in the United States, as
> defined in section 705(20) of this title, shall, solely by reason of her or his
> disability, be excluded from the participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity receiving Federal
> financial assistance or under any program or activity conducted by any Executive
> agency or by the United States Postal Service.

29 U.S.C. § 794(a).  "The Rehabilitation Act adopts the scheme of 'remedies, procedures, and

rights set forth in Title VI of the Civil Rights Act of 1964,' 42 U.S.C. § 2000d et seq., to remedy

alleged violations of Section 504 by recipients of federal funding." A.W., 486 F.3d at 803-04

(quoting 29 U.S.C. § 794a(a)(2)).

As the Third Circuit has explained, "[w]hile the IDEA grants a positive right to a 'free

appropriate public education,' section 504 of the Rehabilitation Act of 1973 essentially prohibits

federally funded entities from denying a free appropriate public education on the basis of

---

declare a child eligible for special education and other services.  This would undermine IDEA's
purpose: if the parents were barred from bringing suit for tuition until the school district created
an IEP, the school district would have no incentive to act at all.  The Board is entitled to the
parents' cooperation in making the child available to the Board for evaluation and to a reasonable
time in which to act.  In the case at bar, Defendants had the Plaintiffs' cooperation and the
information necessary to make a finding beginning sometime around June 2005.  The year-long
delay that followed was unreasonable.

disability." Melissa S. v. Sch. Dist. of Pitt., 183 Fed. App'x. 184, 189 (3d Cir. 2006) (citing

Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 278 (3d Cir. 1996)).  Defendant asserts

that under § 504 "R.S. must demonstrate that such violations were done intentionally by the

District because of [R.S.'s] handicap", and that R.S.'s failure to submit any evidence of

intentional discrimination precludes her claim.  See Mot. at 26.

A Plaintiff need not demonstrate intentional discrimination to state a claim under § 504.

See, e.g., Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1999) ("But a

plaintiff need not prove that defendants' discrimination was intentional."); M.G. v. Crisfield, No.

06-5099, 2008 WL 611679, 14 (D.N.J. Mar. 5, 2008) ("But a plaintiff need not prove that

defendants' discrimination was intentional."); J.L. ex rel. J.L. v. Ambridge Area Sch. Dist., No.

06-1652, 2008 WL 509230, *15 (W.D. Pa. Feb. 22, 2008) ("Further, a plaintiff need not prove

that the discrimination required of element (4) is intentional."). In order to state a claim under

§ 504,

> Plaintiffs must set forth sufficient facts to establish that:
>
> > (1) [R.S.] is disabled as defined by the Act; (2) that [R.S.] is otherwise
> > qualified to participate in school activities; (3) the school or the board of
> > education receives federal financial assistance; (4) [R.S.] was excluded from
> > participation in, denied the benefits of, or subject to discrimination at the
> > school; and (5) the school or the board of education knew or should be
> > reasonably expected to know of [R.S.'s] disability.

J.L., 2008 WL 509230 at *15.  Moreover, IDEA specifically provides that a plaintiff may bring

claims pursuant to both IDEA and the Rehabilitation Act:

> [n]othing in this chapter shall be construed to restrict or limit the rights,
> procedures, and remedies available under the Constitution, the Americans with
> Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the
> Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws
> protecting the rights of children with disabilities, except that before the filing of a

civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l); see also J.L., 2008 WL 509230 at *14 -15 ("The text of the IDEA specifically provides that a plaintiff may pursue remedies under other statutes, including section 504 of the Rehabilitation Act . . . .").

Defendant offers no other argument against Plaintiffs' § 504 claim.  Plaintiffs do not provide the Court with sufficient facts to award them summary judgment on their § 504 claim. Indeed, Plaintiffs fail even to cite to the Rehabilitation Act or address the elements of a § 504 claim in their papers.  The parties' summary judgment motions are devoid of factual or legal arguments upon which this Court may decide the cross-motions on Plaintiffs' § 504 claim. Consequently, to the extent that Defendant moves to dismiss Plaintiffs' § 504 claim, the Court will deny the motion.  To the extent that Plaintiffs move for summary judgment on their § 504 claim, the Court will deny the motion.  If Plaintiffs' wish to pursue their § 504 claim, and in the event that discovery on Plaintiffs' § 504 claim is necessary, the Court shall order 60 days of expedited discovery on this sole remaining claim.  At the end of the 60-day discovery period, the Court will entertain a second round of motions on this remaining claim and will consider any legal or factual arguments made by the parties at that time.

IV. CONCLUSION

For the reasons stated above, the Court will affirm ALJ McKeown's June 15, 2006 opinion granting Plaintiffs tuition reimbursement and related costs for the 2005-06 school year

16

and otherwise denying Plaintiffs' request for reimbursement.  The Court will also grant

Defendant's motion for summary judgment on Counts IV and V of Plaintiffs' complaint.  Finally,

the Court will deny both Plaintiffs' motion for summary judgment and Defendant's motion for

summary judgment as to Count III of Plaintiffs' complaint.

      An appropriate order shall issue.

                    /s/ Faith S. Hochberg             

                    **HON. FAITH S. HOCHBERG, U.S.D.J.**